EVERY *vs.* EDGERTON.

Where a *sheriff* sold real estate on an execution for an amount more than
sufficient to satisfy it, and instead of applying the *surplus* in satisfaction of
a second execution in his hands, paid the same over to a *grantee* of the de-
fendant in the execution, to whom the property was conveyed subsequent
to the first, but previous to the rendition of the judgment in the second suit,
and returned the second execution *nulla bona,* &c. IT WAS HELD, that if an
action would lie, *case* for a false return, and not *assumpsit* for money had
and received, was the most appropriate remedy; although *it seems* that
assumpsit would be sustained, where the right of the plaintiff to the money
was clear and unquestionable.

The bare fact of a *grantor* remaining in possession of lands conveyed by him
to a third person is not enough, uncorroborated by other circumstances, to
subject the transaction to the imputation of fraud.

A *grantee* of real estate, sold under an execution against the grantor, on a
· judgment entered previous to the conveyance, is entitled to the *surplus.*

Where a sheriff is sought to be charged for the avails of property sold, and it
is uncertain what the property did in fact bring, evidence on his part that
the interest of the defendant in the execution in the premises sold was of
little or no value, is competent and admissible.

THIS was an action of assumpsit, tried at the Delaware cir-
cuit in September, 1829, before the Hon. JAMES EMOTT, then
one of the circuit judges.

The suit was against the defendant, as sheriff of the county
of Delaware. The declaration contained counts for money
had and received, lent and advanced, and paid, laid out and
expended; and a fourth count, which was special, for money
had and received by the defendant, on an execution in favor
of the plaintiff, against one John Vermilyea. The defendant
pleaded the general issue. On the trial it appeared that on the
26th February, 1829, a *fi. fa.* was issued on a judgment in favor
of the plaintiff, against Vermilyea, for $110,99, and delivered to
the sheriff, returnable on the first Monday of June, then next; the
judgment purporting to have been entered on the day of the is-
suing of the execution. On 23d June, 1829, the execution was
returned to the clerk's office, with a return of *nulla bona,* &c.
endorsed by the sheriff. On the 9th June, 1829, the sheriff,
by virtue of an execution issued on a judgment in favor of one
Dimmick, against Vermilyea, for $74,39, *docketed* 28th No-

vember, 1820, (the principal, interest and costs of which amounted to $130,63,) sold a mill, mill site and 30 acres of land adjoining the mill lot, to one Dean, for the sum of $380. The sale was conducted under the directions of Dimmick, who testified that the 30 acres were sold to make the property more saleable; no money was paid on the sale to the sheriff; Dimmick accepted Dean's note for $100, Vermilyea gave a receipt to the sheriff for the surplus, Dimmick receipted the execution in full, and the sheriff executed a certificate of sale to Dean. On the part of the defendant it was shewn, that on the 31st July, 1828, Vermilyea, by a *quit-claim deed*, for the consideration expressed of $600, conveyed to his mother, Phœbe Vermilyea, the mill and mill site, which were subsequently sold under Dimmick's execution; this deed was duly acknowledged and recorded. The defendant also offered to prove by Vermilyea that he, Vermilyea, never had title to, or interest in the 30 acres of land sold to Dean, and had not been in the possession thereof for more than a year previous to the sale; and that at the time of the sale he acted as the agent of his mother in giving the receipt for the surplus; which evidence was objected to and rejected by the judge. The defendant also offered to prove that Dean was a creditor of Vermilyea to a considerable amount, and bid the sum of $380 at the sale, in the hope of saving his debt, in case a judgment creditor of Vermilyea should be disposed to *redeem* the property; this evidence was also objected to, and rejected. The plaintiff proved that since the conveyance by Vermilyea to his mother, he had remained in possession of the property conveyed, in the same manner as previous to the conveyance. A verdict was taken for the plaintiff for the amount of his execution, subject to the opinion of this court, on a case made.

*S. Sherwood*, for plaintiff.

*J. A. Spencer*, for defendant.

*By the Court*, SUTHERLAND, J. The plaintiff contends that the sale under Dimmick's execution, producing sufficient to satisfy both that and the plaintiff's execution, the defendant is

liable for money had and received to his use, whether he actually received the same, or accepted the receipt of Vermilyea in lieu of it; that the bid of Dean, the purchaser at the sale, followed up by a certificate of sale, was money in the plaintiff's hands, and he was bound to apply the surplus to the plaintiff's execution, and not to pay it over to Vermilyea; and that he cannot be permitted to say that the property sold did not belong to the defendant in the execution, as he is not responsible for the title. And he further contends that the quit claim deed from Vermilyea to his mother, of the 31st July, 1828, was fraudulent and void, as against creditors, there having been no change of possession, nor proof of the actual payment of the consideration money.

On the other hand, it is maintained that the action is misconceived; that it should have been *case*, for a false return, and not *assumpsit*; that the plaintiff's judgment was no lien on the mill and mill site, they having been conveyed by Vermilyea to his mother before the judgment was obtained, and that any surplus resulting from the sale of them belonged to Mrs. Vermilyea, the grantee, and not to the plaintiff; that the defendant should have been permitted to show that the 30 acres sold with the mill never belonged to Vermilyea, and of course, that the plaintiff's judgment was no lien upon it, and the money produced by the sale was neither in law nor equity applicable to the satisfaction of his execution. And finally, that the sale having been made after the return day of the plaintiff's execution, if the money had been actually paid to the sheriff, it could not then have been levied on by that execution.

I am inclined to think the plaintiff cannot recover as for money had and received to his use, upon the evidence in this case. In *Denton* v. *Livingston*, 9 Johns. R. 96, it was held that an action of assumpsit would lie against a sheriff for the amount of goods sold by him under a *venditioni exponas*, though the purchaser to whom the goods were delivered had not paid and refused to pay the amount of his bid. That, however, was an action brought by the plaintiff in the execution under which the goods were sold, and the sheriff had returned upon the execution that he had levied upon sufficient goods to sat-

isfy it. The declaration in that case also contained a special count, adapted to the case, and it was upon that count that the action was sustained. The main principle established in that case was, that if the sheriff part with the possession of goods sold by him upon execution, without receiving the money for them, he is answerable for the amount in an action of assumpsit. The same doctrine was held in *Doty* v. *Turner*, 8 Johns. R. 20. In both those cases, however, the sheriff admitted by his return that he had levied upon sufficient property to satisfy the execution; and where property sufficient to satisfy and execution, and properly applicable to it is levied upon, it is a satisfaction of the judgment as against the defendant, and the only remedy of the plaintiff in the execution is against the sheriff. 4 Cowen, 418. 7 id. 14, 21.

In *Armstrong* v. *Garrow*, 6 Cowen, 465, it was held, that if a sheriff take a promissory note in satisfaction of a ca. sa. and discharge the defendant, although such note is void as beween the sheriff and the maker, and is no satisfaction of the execution, except at the election of the the plaintiff, yet the plaintiff may ratify the transaction, and recover against the sheriff as for much money had and received to his use, with interest from the return day of the execution. If so ratified by the plaintiff, the execution is considered as satisfied, and the note may then be enforced by the plaintiff against the maker. Under such circumstances it was held that the taking of the note by the sheriff was equivalent to the receiving of the money, so as to sustain an action for money had and received. 11 Johns. R. 468, 518. 3 Mass. R. 403. In the case of *Armstrong* v. *Garrow*, the execution had been returned *satisfied* by the sheriff; and no case has been referred to by the counsel in which an action of assumpsit has been maintained against a sheriff, on the ground that he ought to have applied money in his hands to a particular execution, where such money was not raised by a sale under such execution, and where the sheriff has furnished the party with an ample remedy in another form of action, by having returned the execution *nulla bona aut tenementis.* In such cases the application to the court has been by motion to compel the sheriff to apply the surplus to the junior execution. 3 Caines, 84. 5 Johns. R. 163. The

appropriate remedy in such a case would seem to be an action for a false return. I do not intend, however, to say that assumpsit will not lie under such circumstances, if the right of the plaintiff to the money is clear and unquestionable ; but in this case the plaintiff's claim does not appear to me of that character. The plaintiff has no equitable title to the proceeds of any real estate upon which his judgment was *not a lien.* It was not a lien upon the mill and mill site, unless the conveyance from John Vermilyea to his mother of the 31st July, 1828, was fraudulent and void. There is nothing to impeach it, but the simple circumstance that the grantor remained in possession after the deed was given ; in relation to real estate, that is not even a badge of fraud. The deed is not set forth in the case ; the consideration expressed in the deed is said to have been $600, and payment of it was undoubtedly acknowledged on the face of the deed, which is *prima facie* evidence of the fact. There is nothing in the case to show that the grantor was at that time indebted to the plaintiff, or any other person, except Dimmick, upon whose judgment the sale was made, and the conveyance could not have been intended to defraud him, because the grantee took it subject to that judgment. If the mill and mill site alone, therefore, had been sold, and had produced more than sufficient to satisfy Dimmick's execution, the surplus would have equitably belonged to Vermilyea's mother, and not to the plaintiff, and upon an application to the court the sheriff would have been directed to pay it over to her. *Williams* v. *Rogers,* 5 Johns. R. 133.

What proportion of the $380 was bid for the mill and mill site, and what for the 30 acres adjoining, there is no evidence in the case to show. If, as the defendant offered to prove, Vermilyea never owned the 30 acres, and was not even in possession of them, it is not probable that the purchaser attached much value to them in his bid. I am inclined to think, under all the circumstances of the case, that this evidence ought to have been received. In *Denton* v. *Livingston,* the sheriff was permitted to show that some of the property sold by him upon the plaintiff's execution was not liable to be sold, and for that amount he was held not to

NEW-YORK, be answerable. Although that was personal property, the
May, 1831. principle is equally applicable to real estate. Besides, the ev-
idence was material, as tending to show that the surplus in
the sheriff's hands was not essentially increased by including
this lot in the sale. The testimony of Dimmick would seem
to give color to the opinion that this lot was included in the
sale, not because it belonged to Vermilyea, the defendant in
the execution, but because it was convenient to the mill, and
it was supposed the mill would sell better with it than with-
out it.

Judgment for defendant.